UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES M. VANIDESTINE,

        Plaintiff,

  v.                                            Case No. 18-C-1776

MARINETTE COUNTY JAIL,
MARINETTE COUNTY SHERIFF,
CO WEDDEL,
CO WINNEKINS,
CO HAUPT,
CO TIMBLIN, and
JOHN DOES 1-9,

        Defendants.

---

## ORDER SCREENING AMENDED COMPLAINT

---

       Plaintiff James M. Vanidestine, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was an inmate in the Marinette County Jail. Vanidestine also filed a motion to proceed without prepayment of the filing fee. On November 15, 2018, the court ordered Vanidestine to pay an initial partial filing fee of $21.25 or advise the court why he was unable to do so within 21 days. The court dismissed this action without prejudice on December 21, 2018, because Vanidestine failed to pay the fee or explain why he was unable to do so.

       On January 2, 2019, Vanidestine filed a notice of appeal suggesting that a brain injury resulted in his "mistakenly neglecting to contact the court." Dkt. No. 10. Five days later, after the Court of Appeals issued a PLRA fee notice, Vanidestine filed a motion for enlargement of time to pay fees due to his excusable neglect; the motion was ambiguous as to whether he sought more time

to pay the initial partial filing fee or the appellate filing fee. Given the motion's ambiguity, this court entered an indicative ruling pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, notifying the Court of Appeals of this court's inclination to construe Vanidestine's motion as a Rule 60(b) motion to vacate, to grant that motion, and to allow Vanidestine more time to pay the initial partial filing fee or have it waived. The Court of Appeals remanded the case shortly thereafter and waived the appellate filing fee.

On remand, in an order dated January 24, 2019, this court waived the initial partial filing fee and screened Vanidestine's complaint. Finding that Vanidestine's complaint contained several deficiencies, the court provided Vanidestine an opportunity to amend his complaint to cure the deficiencies within 45 days. The court advised Vanidestine that an amended complaint supersedes the original complaint and must be complete in itself. Vanidestine has timely filed an amended complaint, which the court will now screen.

### SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Vanidestine alleges that, on April 11, 2018, while confined in Marinette County Jail (MCJ), inmate Laron Deshay Mitchell attacked him in his cell. As a result of the attack, Vanidestine suffered multiple head injuries, which were later diagnosed as a broken eye socket, broken nose, bilateral broken jaw, and a brain bleed. Construing his complaint liberally, it appears Vanidestine alleges that Mitchell had a history of violence that should have resulted in a classification other than medium security where apparently Vanidestine was housed. Vanidestine alleges that, prior to the attack, Mitchell entered his cell twice. After the second entry, Mitchell removed his shirt and yelled at Vanidestine, and another inmate ran out of the cell—according to Vanidestine, these were "warning signs of violent behavior" that Correctional Officer (CO) Weddel, who was monitoring the jail cameras, either ignored or failed to identify. ECF No. 21 at 15. Vanidestine claims that Mitchell walked away undetected, that the assault went unidentified, and that he first received medical treatment about two hours after the attack.

3

At some point after the attack, CO Weddel received a call for help, and she responded by indicating that officers would stop by the cell on their rounds. COs Haupt and Timblin stopped by Vanidestine's cell around 3:20 p.m. and noted that he had facial injuries, including blood and some abrasions. A criminal complaint related to the incident indicated that CO Timblin noticed that Vanidestine had a small amount of blood near his right ear and a red mark across his right cheek. Shortly after informing CO Timblin about the attack, Vanidestine lost consciousness. Vanidestine alleges that COs Haupt and Timblin took him to "the hole," placed him face down on a concrete slab, and then completed a security check. CO Haupt then talked to nurse Lisa Swanson, who determined that Vanidestine needed to be taken to Bay Area Medical Center (BAMC).

Vandestine alleges that it took more than two hours before he was transported to the hospital for emergency care. CO Winnekins transported Vanidestine to BAMC around 5:15 p.m. Vanidestine claims that, during transport, CO Winnekins took pictures of Vanidestine's injuries on his personal cell phone. Upon arrival at BAMC, Vanidestine received an MRI, which revealed that he had a broken eye socket, broken nose, bilateral broken jaw, and brain bleed. Vanidestine was then transported to Aurora Hospital, where he received emergency surgery, which included wiring his jaw shut. After surgery, Vanidestine remained in the intensive care unit (ICU) for several days before being moved to a regular room. While still at the hospital, an unidentified CO told Vanidestine that his mother and children would be physically removed from the hospital if he "didn't do something." *Id.* at 19. Vanidestine suggests that he was removed from the hospital in part because MCJ administrators determined that he was costing too much money. His doctor stated he wanted Vanidestine to walk a lap around the floor before he was discharged. A CO then started walking Vanidestine around the floor, but he made it only thirty feet before he fell. An unidentified

4

CO took Vanidestine's release information, follow-up instructions, and medication prescriptions upon Vanidestine's release.

After his return to MCJ, Vanidestine was placed in a holding cell in the booking area for three days. The jail physician provided by the contract medical provider came to his cell and pronounced Vanidestine "fine," even though he was unable to walk to the door for an exam. The doctor disregarded the follow-up instructions and prescriptions Vanidestine received from the specialists at the hospital, and instead stated that all Vanidestine needed was Tylenol. As a result, Vanidestine alleges he suffered further pain and adverse consequences. He was then transferred to segregation where his meals were put in a blender because of his broken jaw and he was given one straw which he used for over a month. Even though he continued to experience dizziness, blurred vision, extreme headaches, and other adverse effects of his injuries, jail staff refused to return him to the hospital in order to avoid paying for further treatment. Vanidestine further alleges that the jail administrator warned him not to talk to anyone outside the jail about his medical treatment or he would lose his telephone privileges.

During his time in "Seg B" at MCJ, Vanidestine made several requests for the medication that the trauma medical specialists at Aurora Hospital prescribed as well as follow-up care for the screws in his mouth. Vanidestine alleges that he was having seizures and clenching his jaw, and one night at around 3:00 a.m., the screws in his mouth ripped out, which caused him pain and resulted in profuse bleeding. He alleges that he waited 45 minutes to receive care despite pounding on the cell door and attempting to scream. That day, he was sent to BAMC, where he was cleaned up. The next day, he saw an oral surgeon, who removed the rail and discontinued treatment. Vanidestine claims that an MCJ administrator suggested to the surgeon that Vanidestine was

5

intentionally tampering with the screws. This termination of care, Vanidestine alleges, caused "great pain." *Id.* at 24. He alleges that he received no further follow-up care until he was transported to Dodge Correctional Institution, where an optometrist noted that he had physical damage to his eye, and then Oshkosh Correctional Institution, where a neurologist diagnosed him with post-concussion syndrome.

Vanidestine alleges that, although the defendants had "all necessary information, equipment, housing, training, policy, and procedures in effect when the attack happened," *id.* at 13, and that they failed to perform their assigned tasks to prevent the attack. He further alleges that an MCJ administrator failed to assign duties to COs to protect and provide care for inmates, that an MCJ administrator and the Marinette County Sheriff allowed overcrowding in the jail, and that an unidentified John Doe misclassified Mitchell as "Medium Security" given his history and personal information. *Id.* at 13–14.

## THE COURT'S ANALYSIS

As an initial matter, it is unclear from the complaint whether Vanidestine was a pretrial detainee during the alleged attack. Vanidestine claims that the attack occurred in the afternoon on April 11, 2018, but public Wisconsin circuit court records reveal that Vanidestine was in a jury trial from April 9 through April 11, 2018. *See* Marinette County Case No. 2017CF000087, Wisconsin Circuit Court Access, available at https://wcca.wicourts.gov. Given this uncertainty, the particular constitutional amendment that underlies Vanidestine's claims related to his health and safety is unclear, but he is nonetheless entitled to protection under either the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. *See Smith v. Sangamon Cty. Sheriff's Dep't*, 715

F.3d 188, 192 (7th Cir 2013); *see also Board v. Farnham*, 394 F.3d 469, 477–78 (7th Cir. 2005) (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003)).

The fact that persons held in custody at a jail are not free to choose their own cellmates or go to the hospital or doctor for medical treatment gives rise to a duty of the custodian of the jail to protect the inmate from known risks and to provide needed medical care. A prison or jail official's "deliberate indifference" to a substantial risk of serious harm to an inmate posed by another inmate violates the Eighth and Fourteenth Amendments. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Likewise, a prison or jail official's deliberate indifference to the serious medical needs of a prisoner violates the Eighth and Fourteenth Amendments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Moreover, while the county or municipal employer of a correctional officer who violates an inmate's constitutional rights is not ordinarily liable under the doctrine of *respondeat superior*, a county or municipality may be held liable if the violation resulted from a policy implemented or custom allowed by those officials "whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

The mere fact that Vanidestine was attacked by another inmate does not state a claim against the County, the Sheriff, or the correctional staff on duty at the time. *Farmer*, 511 U.S. at 834 ("It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."). It is only where a prison or jail official is "deliberately indifferent" to the risk of such an attack that he or she can be held liable. "Deliberate indifference" has both an objective and a subjective element. To be deliberately indifferent, "the official must both be aware of facts from which the inference could be

7

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Vanidestine alleges no facts from which it could be inferred that the jail staff had reason to know that inmate Mitchell was a threat to Vanidestine's safety. There is no allegation that he had been violent toward Vanidestine, or anyone else for that matter, or had threatened violence. Nor is their any allegation about Mitchell's record from which one could infer that he was likely to prey on weaker inmates or that Vanidestine was vulnerable in any way. All we are told in the complaint is that on April 11, 2018, Mitchell brutally beat Vanidestine. This is not enough to state a claim either against the County for a policy or custom of failing to properly classify violent offenders or against the correctional officer responsible for classifying Mitchell and placing him in the general population.

In support of his claim against CO Weddel, Vanidestine alleges that Weddel was stationed in the communication center and was in charge of security surveillance equipment, including cameras, monitors and phones. In the words of the complaint,

> CO Weddel failed to identify an escalating situation, threatening, dangerous, and unacceptable behavior. Twice. Then when called on the emergency phone CO Weddel failed to act professionally. She failed to institute emergency procedure. She denied me emergency medical assistance by not sending immediate help and security.

Dkt. No. 21 at 5. Liberally construed, these allegations are sufficient to state a claim against Weddel for deliberate indifference to Vanidestine's physical safety. The allegation that Weddel "failed to identify an escalating situation, threatening, dangerous, and unacceptable behavior," and indeed did so twice, gives rise to the inference that she observed Mitchell becoming agitated toward Vanidestine and failed to take action. The allegation that Weddel failed to take action after

Vanidestine called on the emergency phone likewise is sufficient to state a claim for deliberate indifference. The inference to be drawn from this allegation is that Weddel knew Vanidestine was injured and in need of help and took no action. Of course, it could be that Weddel never saw any sign that Mitchell was going to attack Vanidestine and didn't realize he was hurt, but at this stage of the case, the claim against Weddel survives.

Vanidestine has also stated a deliberate indifference claim against COs Haupt and Timblin. To state a claim for deliberate indifference to a serious medical need, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Farnham*, 394 F.3d at 478 (finding it "appropriate" in the context of deliberate indifference to apply the same standard to claims arising under the Fourteenth and Eighth Amendments, which are applicable to detainees and convicted prisoners, respectively). This indifference, which must be subjective, "includes intentionally denying or delaying access to medical care." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (citing *Estelle*, 429 U.S. at 104–05); *Duckworth v. Ahmad*, 531 F.3d 675, 679 (7th Cir. 2008).

Vanidestine alleges that he lost consciousness in front of COs Haupt and Timblin after they noticed that he was bleeding around the ear and had facial abrasions, and were told he had been physically attacked. Vanidestine alleges that Haupt and Timblin took him to "the hole" and placed him face down on a concrete slab, all while he was unconscious. Haupt and Timblin then proceeded to complete their security check and then Haupt contacted a nurse to assist Vanidestine. It was not until about two hours after Haupt and Timblin witnessed Vanidestine's injury that he received

9

medical treatment, which involved an MRI and surgery. These allegations are sufficient to state a claim for deliberate indifference against both Haupt and Timblin.

Vanidestine may also proceed on a claim against the unidentified John Doe MCJ administrator who told him that he would lose his phone privileges if he spoke with anyone outside the jail about his medical care. No retaliatory action has been alleged, but the threat of such action is sufficient to state a First Amendment chilling claim. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011) ("The First Amendment prohibits threats of punishment designed to discourage future protected speech."); *see also Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system."). For chilling claims, the Seventh Circuit applies an objective test: "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita*, 665 F.3d at 878 (citing *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009)). Vanidestine's allegations that he was threatened with punishment were he to speak about his healthcare with anyone outside the jail are sufficient to state a First Amendment chilling claim.

Vanidestine has failed to state a claim against CO Winnekins. Vanidestine alleges that Winnekins transported him to BAMC and took pictures of his injuries using a personal cell phone in violation of his right to privacy. The Supreme Court has noted that "[t]he cases sometimes characterized as protecting 'privacy'" under the Fourteenth Amendment have involved at least two different kinds of interests, including "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *see also Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977). However, the Court later clarified that the implication in *Whalen* and *Nixon*

that such a right to privacy exists was dicta. *See NASA v. Nelson*, 562 U.S. 134, 138 (2011); *Leiser v. Moore*, 903 F.3d 1137, 1145 (10th Cir. 2018) (recognizing that the *NASA* court characterized *Whalen* and *Nixon* as dicta). Before that clarification, the Seventh Circuit relied on *Whalen* and *Nixon* to hold that the Fourteenth Amendment's right to privacy "clearly covers medical records and communications." *Denius v. Dunlap*, 209 F.3d 944, 955–56 (7th Cir. 2000). As far as this court is aware, the Seventh Circuit has not clarified the scope and extent of the Fourteenth Amendment's right to privacy post-*NASA*. *See Adell v. Hepp*, No. 14-CV-1277-JPS, 2015 WL 6680237, at *4 (E.D. Wis. Nov. 2, 2015) ("Whether, and to what extent, an inmate retains a Constitutional right of privacy in his/her medical records is an open question in the First, Fourth, Seventh, and Eighth Circuits."). Regardless, photographs of injuries to a prisoner do not constitute medical records, and there is no suggestion that Winnekins was doing anything other than making a record of Vanidestine's injuries, something that might help him in his suit. Accordingly, his privacy claim against Winnekins will be dismissed.

To the extent that Vanidestine attempts to hold MCJ administrators and Marinette County Sheriff Jerome Sauve liable for the actions or inactions of COs, he states no claim, as supervisory status alone is insufficient to establish personal liability under § 1983. *See Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 383 (7th Cir. 1988) ("Section 1983 does not recognize a doctrine of superior's liability."). However, Vanidestine's allegations that certain MCJ administrators and other MCJ staff denied him medical care after his return to MCJ are sufficient to state a claim at least at this stage. Vanidestine claims that the jail staff, including the doctor, interfered with his medical care at the hospital to avoid increased expense to the County, and that upon his return to the jail, he was denied follow-up care and treatment prescribed by the physician who treated him at the

11

hospital, likewise, because of concern over expense, or simply indifference. These allegations are also sufficient to state claims against the individual actors, but Vanidestine will be required to file an amended complaint naming the individuals who engaged in such behavior. The case will therefore proceed on the claims identified against the defendants whom Vanidestine has identified, with the understanding that Vanidestine will be required to file an amended complaint specifically identifying the John Doe defendants he has named in order for any claims against them to proceed.

Vanidestine's request for the recruitment of counsel, which is embedded in his complaint, Dkt. No. 21 at 27, will be granted also. Vanidestine requests counsel because of the nature of his alleged injuries and their effect on his ability to represent himself. He alleges that because of the effect of his injuries on his sight, balance, memory, and sense of time, he is no longer able to safely perform his duties as a carpenter, a trade he worked in for thirty-five years. Vanidestine is also disadvantaged by the fact that the incident occurred at the Marinette County Jail, where the unidentified defendants are employed, and he is currently incarcerated at Oshkosh Correctional Institution, some sixty miles away. *Henderson v. Gosh*, 755 F.3d 559, 565 (7th Cir. 2014) ("Henderson's limitations were exacerbated by his incarceration, which further restricted his ability to investigate the facts."). Given the severity of the injuries alleged and the logistical obstacles to representing himself, the court concludes that an effort should be made to recruit counsel at this point, even though Vanidestine has not yet made a showing that he has been unable to do so on his own, at least for the limited purpose of assisting him in identifying the remaining defendants and amending his complaint. The court will therefore undertake such an effort.

In sum, Vanidestine may proceed on a deliberate indifference claim against COs Weddel, Haupt, and Timblin, as well as the John Doe doctor and John Doe correctional officers he has yet

to identify. He may also proceed on his First Amendment claim against the John Doe MCJ administrator. All other claims and defendants are dismissed.

**IT IS THEREFORE ORDERED** that Vanidestine's motion to proceed without pre-payment of the full filing fee is granted. The United States Marshal shall serve a copy of the amended complaint and this order upon the defendants who have been identified pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that copies of the amended complaint and this order be sent to the administrator of the Marinette County Jail, as well as to the Marinette County Sheriff, and the Marinette County Corporation Counsel.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh

Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If the plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>125 S. Jefferson Street, Suite 102
>Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide a correct address could result in dismissal of the case for failure to prosecute.

Dated at Green Bay, Wisconsin this __12th__ day of April, 2019.

>s/ William C. Griesbach
>William C. Griesbach, Chief Judge
>United States District Court