UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES M. VANIDESTINE,

    Plaintiff,

    v.    Case No. 18-C-1776

MARINETTE COUNTY JAIL, et al.,

    Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff James Vanidestine filed this action under 42 U.S.C. §1983, alleging that Defendant Officer Danielle Weddel failed to protect him from another inmate and that Defendant Officers Weddel, Stephanie Timblin, and Michael Haupt were deliberately indifferent to his serious medical needs after he was attacked by the inmate.[1] On August 14, 2020, Defendants moved for summary judgment. Dkt. No. 51. Vanidestine, through counsel,[2] responded on January 4, 2021, and Defendants replied on January 29, 2021. The Court will grant Defendants' motion and dismiss this case.

---

[1] At screening, the Court also allowed Vanidestine to proceed on retaliation and deliberate indifference claims against unidentified John Doe administrators and staff members. In his response to Defendants' motion for summary, Vanidestine pursues only his claims against Weddel, Timblin, and Haupt. See Dkt. No. 71 at 2, n.1. The Court will dismiss the John Doe Defendants, Marinette County Jail, and the Marinette County Sheriff.

[2] At the Court's request, attorney Michael Schaalman agreed to represent Vanidestine on a volunteer basis. The Court thanks him for his service.

## BACKGROUND

Vanidestine was taken into custody at the Marinette County Courthouse on April 11, 2018, after being found guilty at a jury trial. Dkt. No. 69 at ¶1. He was booked into the Marinette County Jail and assigned to share a cell with inmate Larson Mitchell. Dkt. No. 75 at ¶1. Vanidestine was laying on his bunk when Mitchell entered his cell. *Id.* at ¶5. After a brief discussion, Mitchell punched Vanidestine in the jaw, sending him backwards against his bunk. *Id.* Vanidestine left his cell to go to the common area, where he called Master Control on the emergency telephone line. *Id.*

Weddel was assigned to Master Control on the afternoon at issue. Dkt. No. 69 at ¶5. Her duties included monitoring the camera systems, doors, alarms, phones, and intercoms. *Id.* at ¶7. While monitoring inmates via the camera system is required, it is not possible to watch all inmates simultaneously. *Id.* at ¶9. Vanidestine's call to Master Control was answered by Weddel at about 3:15 p.m. *Id.* at ¶¶10, 14. Vanidestine said he needed to talk to someone right away. *Id.* at ¶14; Dkt. No. 75 at ¶7. Weddel asked Vanidestine what he needed to talk about, and Vanidestine responded that he would talk to someone in person when they arrived. Dkt. No. 69 at ¶16. Weddel knew that Timblin and Haupt were about to begin their security checks. *Id.* at ¶18. Because she did not see any indication of an emergency and because Vanidestine said he wanted to talk to someone in person, she told Vanidestine that he could talk to Timblin and Haupt when they arrived in ten to fifteen minutes. *Id.* at ¶25. Vanidestine did not object to the plan, nor did he mention any kind of injury or medical need. *Id.* at ¶26.

Less than ten minutes after the call, Timblin and Haupt arrived in Vanidestine's area, where he was talking on the non-emergency telephone to his fiancé. Dkt. No. 69 at ¶¶27-28; Dkt. No. 75 at ¶8. Haupt walked upstairs to check on the cells. Dkt. No. 69 at ¶30. Vanidestine approached

2

Timblin and told her that he needed to be moved to a different unit. *Id.* at ¶31; Dkt. No. 75 at ¶8. As Vanidestine spoke to Timblin, she noticed a small amount of blood by his ear, a red mark on his cheek, and that he was becoming increasingly agitated. Dkt. No. 69 at ¶¶32-34. Timblin asked Vanidestine if he had been involved in an altercation. *Id.* at ¶34. Vanidestine said he had been laying on his bunk when Mitchell had beat him. *Id.* at ¶35. Mitchell, who was also in the common area, said that Vanidestine had called him racial slurs, and another inmate said Vanidestine had spit on Mitchell. *Id.* at ¶¶36-37. Vanidestine did not ask for medical attention or state that he was injured or in pain. *Id.* at ¶40.

Timblin told Vanidestine that they would be separated and placed in the segregation unit pending an investigation into what happened. Dkt. No. 69 at ¶¶38-39. At about 3:25 p.m., Haupt escorted Vanidestine to segregation without incident. *Id.* at ¶43. Vanidestine was speaking, standing, and walking without any apparent difficulty. *Id.* at ¶41. He did not appear to be in distress, and the small mark on his cheek and small amount of blood on his face did not appear to be in need of emergency attention or first aid. *Id.* at ¶¶41-42. Vanidestine walked to segregation without assistance; he was not restrained. *Id.* at ¶44. Vanidestine accepted an offered cot mattress and entered the segregation cell without further comment. *Id.* at ¶47.

About thirty-five minutes later, after Haupt and Timblin took inmate statements and completed their security checks, Haupt went to health services and told the jail nurse that Vanidestine had been involved in an altercation and may need to be checked out. Dkt. No. 69 at ¶53. Shortly thereafter, the nurse evaluated Vanidestine and noted a superficial abrasion to his ear and some bruising and swelling around his right eye. *Id.* at ¶¶54, 57. She also noted swelling along Vanidestine's jawline and that he could not fully open his mouth. *Id.* at ¶57. The nurse decided to send Vanidestine to the emergency room so his jaw could be evaluated. *Id.* at ¶58.

At the emergency room, a CT scan confirmed "a left mandible fracture and an acute left lateral pterygoid plate facture." Dkt. No. 69 at ¶62. The scan also showed a "small volume subarachnoid hemorrhage in the left supratentorium." *Id.* at ¶63. Vanidestine was transferred to the hospital, where it was later determined that the brain bleed was minor and would not require follow up. *Id.* at ¶¶68, 71. Vanidestine had surgery on his jaw on April 13, 2018, and he was discharged back to the jail on April 14, 2018. *Id.* at ¶72-73.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Failure to Protect

Vanidestine asserts that Weddel is liable for failing to protect him from Mitchell. The Supreme Court has explained that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on a claim under the Eighth Amendment for failure to protect, a plaintiff must show that a prison official was "deliberately indifferent to the fact that an inmate was in serious peril of being harmed." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (internal quotation marks and citations omitted). Under this standard, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Vanidestine presents no evidence from which a jury could reasonably conclude that Weddel had reason to know Mitchell presented a serious risk of harm to Vanidestine. Vanidestine and Mitchell did not know each other before being housed together on April 11, and Mitchell had not previously engaged in violent or aggressive behavior toward other jail inmates. Dkt. No 75 at ¶1; Dkt. No. 69 at ¶78. Weddel asserts that she did not observe Vanidestine and Mitchell interacting, and, even if she had seen them on the camera system, Mitchell showed no signs of aggression right up until the time he suddenly punched Vanidestine. Dkt. No. 69 at ¶76. Given that Weddel had no reason to believe Vanidestine was in serious peril of being harmed by Mitchell, she cannot be liable for failing to protect Vanidestine from Mitchell. She is entitled to summary judgment on this claim.

5

## B. Deliberate Indifference to a Serious Medical Need

Vanidestine also asserts that Weddel, Haupt, and Timblin were deliberately indifferent to his serious medical needs after Mitchell attacked him. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (internal quotations omitted)). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). As is the case with a failure-to-protect claim, a prisoner must show "that prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). This means the "officials must know of and disregard an excessive risk to inmate health." *Id.*

Defendants do not dispute that Vanidestine suffered from an objectively serious medical condition.[3] The question is whether Vanidestine presents evidence sufficient for a jury to reasonably conclude that Defendants had reason to know Vanidestine was suffering from a serious

---

[3] The Court notes that, while Vanidestine's injuries of a broken jaw, minor brain bleed, and fractured eye socket were certainly serious, the video and recordings submitted by Defendants reveal that Vanidestine grossly misstated his condition in his complaint. Contrary to his allegations that he fell unconscious and was dragged by officers to a cell where he was placed face down on a mat on the ground, video confirms that he never lost consciousness, walked under his own power, and stood around waiting for a nurse to arrive. Given that Defendants are entitled to summary judgment on the merits, the Court will deny Defendants' request that the Court dismiss this case as a sanction for Vanidestine's fraud upon the Court. However, the Court cautions Vanidestine that, in future litigation, the Court will not tolerate false testimony concerning a material matter.

medical condition when they interacted with him. He does not, so Defendants are entitled to summary judgment.

As to Weddel, Vanidestine concedes that, when he called her, he asked only that he be allowed to talk to someone in person. When she told him that Haupt and Timblin would be there in ten to fifteen minutes, Vanidestine did not press the issue. At no point did Vanidestine inform Weddel that he had been in an altercation or that he had injuries requiring medical attention. Weddel notes that she did not observe the altercation or any of Vanidestine's injuries. Further, she had no reason to suspect that something was amiss as all the inmates were acting normally when she observed them. Based on this record, no jury could reasonably conclude that Weddel had reason to know that Vanidestine was in need of medical attention. Vanidestine asserts that Weddel should have checked the video prior to his call to better understand the context for his request to speak to someone, but "an official's failure to alleviate a significant risk that he should have perceived but did not" is not an adequate basis for liability. *See Farmer*, 511 U.S. at 838. Weddel is entitled to summary judgment.

Haupt and Timblin are also entitled to summary judgment. Nothing in the record suggests that Haupt or Timblin had any reason to know the severity of Vanidestine's injuries. Timblin asserts that she saw a small amount of blood on his face and a small red mark on his cheek, but such injuries are minor and do not indicate a need for emergency care. Further, Vanidestine remained conscious throughout his interactions with Haupt and Timblin, he walked and talked without difficulty, and he never made any statements suggesting that his injuries were more than superficial or that he was in pain. It was only after the CT scan that it became obvious that Vanidestine's injures were far more serious than they appeared on the surface. But, given that

7

Haupt and Timblin had no way of knowing this at the time they interacted with Vanidestine, they are entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the John Doe Defendants, Marinette County Jail, and Marinette County Sheriff are **DISMSISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 4th day of February, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.